1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2004-5,<br><br>        Plaintiff,<br>v.<br><br>PATRICK LEONARD TIERNEY,<br><br>        Defendant. | Case No.: _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

## I.    NATURE OF THE CASE

1.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 brought by plaintiff THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2004-5 (**"BNYM"**) against defendant PATRICK LEONARD TIERNEY (**"Tierney"**) to resolve the dispute between the parties concerning BNYM's entitlement to recover attorney's fees and costs under the provisions Sections 9 and 14 of the Deed of Trust encumbering the real property located at 28023 140th Place NE, Duvall Washington (**"Subject**

COMPLAINT

(2:22-CV-832) – Page 1

**Property"**), which fees and costs BNYM incurred in successfully defending itself in the litigation commenced by Tierney.

## II.    PARTIES

2.    Plaintiff BNYM is a corporation organized under the laws of the State of New York with a principal place of business located at 240 Greenwich Street, New York, NY 10286.

3.    Defendant Tierney is an individual who resides in King County and owns the real property located at 28023 140th Place NE, Duvall Washington (**"Subject Property"**).

## III.    JURISDICTION AND VENUE

4.    Defendant Tierney is a citizen of a different state that Plaintiff BNYM. The amount in controversy exceeds $75,000. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

5.    Venue is proper in this district where the transaction at issue occurred and the real property subject to this transaction is located.

## IV.    FACTUAL BACKGROUND

6.    On or about March 5, 2004, Tierney and his now deceased wife borrowed $208,000.00 (**"Loan"**) from MILA, Inc., secured by a Deed of Trust (**"DOT"**) recorded in the King County Recorder's Office on March 15, 2004, as Instrument No. 20040315000489, against the Subject Property. A true and correct copy of the recorded DOT is attached hereto as **Exhibit A**.

7.    On August 5, 2011, an Assignment of Deed of Trust to the Bank of New York Mellon fka The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2004-5 was recorded in the King County Recorder's Office as Instrument No. 20110805000798. A true and correct copy of the recorded Assignment is attached hereto as **Exhibit B**.

Wright Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(949) 477-5050

8.    On August 26, 2019, an Assignment of Deed of Trust to BNYM was recorded in the King County Recorder's Office as Instrument No. 20190826001519. A true and correct copy of the recorded Assignment is attached hereto as **Exhibit C**.

9.    Section 9 of the DOT states:

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

10.    Section 14 of the DOT states:

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

11.    On July 17, 2020, Tierney sued BNYM's loan servicer Carrington Mortgage Services, LLC (**"CMS"**) and the foreclosing trustee, Aztec Foreclosure Corporation of Washington, seeking to, among other things, enjoin the pending foreclosure sale of the Subject Property and alleging claims for violation of Washington Consumer Protection Act, breach of fiduciary duty, and negligence against the defendants.

12.    On August 13, 2020, Tierney filed his First Amended Complaint in which he added BNYM as a defendant and alleging causes of action for violation of Washington Consumer

Wright Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(949) 477-5050

1   Protection Act, violation of Fair Debt Collection Practices Act, violation of Truth In Lending Act,

2   violation of Equal Credit Opportunity Act, Negligence, and Declaratory and Injunctive Relief

3   against BNYM. In his First Amended Complaint Tierney sought to, among other things, rescind

4   the Loan transaction and cancel the Deed of Trust and challenged BNYM's right to foreclose.

5        13.    Because Tierney's lawsuit significantly affected BNYM's interest in the Subject

6   Property and its rights under the Deed of Trust, it forced BNYM to retain counsel and to defend

7   itself from Tierney's claims and allegations and to incur substantial and significant attorney's fees

8   and costs.

9        14.    On March 18, 2021, the Court granted CMS's and BNYM's Partial Motion to Dismiss

10   Tierney's First Amended Complaint as to claims for violations of the Truth In Lending Act and of

11   the Equal Credit Opportunity Act.

12        15.    Thereafter, on November 12, 2021, the Court granted BNYM's Motion for Summary

13   Judgment in its entirety resulting in a judgment in BNYM's favor on all counts.  The Court also

14   granted CMS's Motion for Partial Summary Judgment, leaving only the claim for the Real Estate

15   Settlement Procedures Act against CMS.

16        16.    On March 10, 2022, Tierney appealed the judgment in **BNYM's** favor. As of the date

17   of this Complaint, Tierney's appeal is still pending.

18        17.    On February 8, 2022, Tierney and CMS settled the remaining claims against CMS.

19        18.    On May 2, 2022, following a dispute over the scope of the settlement agreement, the

20   Court entered an Order Enforcing the Oral Terms of Settlement entered into by Tierney and CMS.

21   The primary issue in dispute was whether BNMY was a party to the settlement, release, and fee

22   waiver.  CMS argued that BNYM was a party to the settlement terms and therefore, the claims

23   between all parties, including BNYM and Tierney had been resolved.  Tierney argued that BNYM

24   was NOT a party to the settlement terms because he wanted to continue to pursue her claims against

COMPLAINT

(2:22-CV-832) – Page 4

Wright Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(949) 477-5050

BNYM.  The Court ruled in Tierney's favor, finding that BNYM was NOT a party to the settlement. As a result, both Tierney's claims against BNYM and BNYM's claims for reimbursement of fees survived.  Tierney was repeatedly warned of this risk, yet insisted that BNYM not be a party to the settlement.

19.    As a result of the litigation commenced by Tierney and his subsequent appeal BNYM incurred attorney's fees and costs in the amount of $137,850.48 and continues to incur such fees and costs.

## V.    FIRST CLAIM: DECLARATORY RELIEF

20.    BNYM restates and incorporates by reference its allegations contained in Paragraphs 1 through 19 as though fully set forth herein.

21.    A real, present, and justiciable controversy has arisen and now exists between BNYM, on one hand, and Tierney, on the other, concerning BNYM's right to recover attorney's fees and costs in has incurred and continues to incur as a result of the lawsuit filed by Tierney and his subsequent appeal against BNYM.

22.    BNYM contends that pursuant to Sections 9 and 14 of the DOT, its attorney's fees and costs incurred in Tierney's lawsuit and his subsequent appeal became additional debt that is secured by the DOT, which BNYM can recover from Tierney with interest, upon notice requesting payment.

23.    BNYM is informed and believes that Tierney disputes this contention.

24.    BNYM therefore requests a declaration that, pursuant to Sections 9 and 14 of the DOT, attorney's fees and costs which BNYM incurred (and continued to incur) in defending itself in Tierney's lawsuit and his subsequent appeal are Tierney's additional debt that is secured by the DOT which can be recovered, with interest, upon notice requesting payment.

Wright Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(949) 477-5050

25.    A declaration by this Court is necessary and appropriate to resolve the present dispute and controversy between the parties.

26.    Declaratory relief from this Court will terminate the present dispute and controversy.

27.    BNYM has no adequate remedy at law.

## VI.    PRAYER FOR RELIEF

28.    BNYM requests that this Court:

a.    Declare that pursuant to Sections 9 and 14 of the DOT, attorney's fees and costs BNYM incurred in defending itself in Tierney's lawsuit and his subsequent appeal became Tierney's additional debt that is secured by the DOT;

b.    Declare that pursuant to Sections 9 and 14 of the DOT, attorney's fees and costs BNYM incurred in defending itself in Tierney's lawsuit and his subsequent appeal are payable by Tierney to BNYM, with interest, upon notice requesting payment;

c.    Award BNYM is attorney's fees and costs incurred in this action; and

d.    Enter any such other and further relief as is just and equitable.

Respectfully submitted,

Dated: March 7, 2023                    WRIGHT, FINLAY & ZAK, LLP

*/s/ Lukasz I. Wozniak*
Lukasz I. Wozniak, WSBA# 47290
*Attorneys for Plaintiff* THE BANK OF
NEW YORK MELLON, f/k/a THE
BANK OF NEW YORK AS TRUSTEE
FOR REGISTERED HOLDERS OF
CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2004-5

COMPLAINT

(2:22-CV-832) – Page 6

Wright Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
(949) 477-5050

EXHIBIT  A



**2004 0315 000489**
WASHINGTON TIT DT    35.00
PAGE001 OF 016
03/15/2004 10.38
KING COUNTY, WA

**After Recording Return To:**

MILA, INC.
6021 244TH STREET SW
MOUNTLAKE TERRACE, WASHINGTON 98043-5400

TICOR TITLE       **DEED OF TRUST**   
6316252

**Grantor(s)** CHRISTY A. TIERNEY and PATRICK L. TIERNEY, WIFE AND HUSBAND

**Grantee(s)** MILA, INC.

**Legal Description** LOT(S) 11, DUVALL'S PARKWOOD ESTATES DIVISION 3, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 138, OF PLATS, PAGE(S) 6 THROUGH 8, IN KING COUNTY, WASHINGTON. Tax Parcel Number 667293-0110-09

**Assessor's Property Tax Parcel or Account Number** 667293-0110-09

**Reference Numbers of Documents Assigned or Released**

After Recording Return To

MILA, INC
6021 244TH STREET SW
MOUNTLAKE TERRACE, WASHINGTON 98043-5400

Loan Number 2004 02-23-00209
MERS Number 100175200000460876

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

**(A)  "Security Instrument"** means this document, which is dated **MARCH 5, 2004**, together with all Riders to this document

**(B)  "Borrower"** is **CHRISTY A. TIERNEY and PATRICK L. TIERNEY, WIFE AND HUSBAND.** Borrower is the trustor under this Security Instrument

**(C)  "Lender"** is **MILA. INC..** Lender is a **CORPORATION** organized and existing under the laws of **WASHINGTON.** Lender's address is **6021 244TH STREET SW, MOUNTLAKE TERRACE, WASHINGTON 98043-5400.**

**(D)  "Trustee"** is **TICOR TITLE COMPANY, 13106 SE 240TH ST #110, KENT, Washington 98031.**

**(E)  "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing  under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI 48501-2026, tel  (888) 679-MERS.

**(F)  "Note"** means the promissory note signed by Borrower and dated **MARCH 5, 2004**  The Note states that Borrower owes  Lender **TWO HUNDRED EIGHT THOUSAND AND 00/100ths** Dollars (U S **$208,000.00**) plus interest  Borrower has  promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 1, 2019**

**(G)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property "

**(H)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

**WASHINGTON** Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     **Form 3048  1/01** *(page 1 of 13 pages)*

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| ⎢ Adjustable Rate Rider | ⎢ Condominium Rider | ⎢ Second Home Rider |
| ⎢X Balloon Rider | ⎢ Planned Unit Development Rider | ⎢ Other(s) [specify] |
| ⎢ 1-4 Family Rider | ⎢ Biweekly Payment Rider | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

**(M) "Escrow Items"** means those items that are described in Section 3

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____ **County** _____ of _____ **KING** _____
        [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

**LOT(S) 11, DUVALL'S PARKWOOD ESTATES DIVISION 3, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 138, OF PLATS, PAGE(S) 6 THROUGH 8, IN KING COUNTY, WASHINGTON.**

**WASHINGTON-**Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3048 1/01 *(page 2 of 13 pages)*

**Tax Parcel Number 667293-0110-09**

which currently has the address of    <u>**28023 NORTHEAST 140TH PLACE**</u>

                                                                    [Street]

<u>**DUVALL**</u>                , Washington     <u>**98019**</u>         ("Property Address")

        [City]                                [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

      UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

      **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S currency However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

      Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds

**WASHINGTON**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      Form 3048  1/01 *(page 3 of 13 pages)*

File No  6316252-1

**Legal Description**
**Exhibit "A"**

The land referred to herein is described as follows

Lot(s)  1, Duvall's Parkwood Estates Division 3, according to the plat thereof recorded in Volume 138, of Plats. page(s) 6 through 8, in King County, Washington

Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

 **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

 If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

 Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

 **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items" At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be in writing In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

 Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

 The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow

**WASHINGTON** Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** **Form 3048 1/01** *(page 4 of 13 pages)*

account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

**WASHINGTON**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3048  1/01 *(page 5 of 13 pages)*

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**WASHINGTON**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     Form 3048 1/01 *(page 6 of 13 pages)*

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**WASHINGTON**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3048  1/01 *(page 7 of 13 pages)*

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed  captive reinsurance " Further.

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any,  paid to Borrower   Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

**WASHINGTON** Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3048  1/01 *(page 8 of 13 pages)*

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be

**WASHINGTON**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**     Form 3048 1/01 *(page 9 of 13 pages)*

refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays

**WASHINGTON**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3048 1/01 *(page 10 of 13 pages)*

Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

**WASHINGTON-**Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3048  1/01 *(page 11 of 13 pages)*

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows.

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

**WASHINGTON** Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    **Form 3048 1/01** *(page 12 of 13 pages)*

**25. Use of Property.** The Property is not used principally for agricultural purposes

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____    _____ (Seal)
                           CHRISTY A. TIERNEY              -Borrower

_____    _____ (Seal)
                           PATRICK L. TIERNEY             -Borrower

                    _____ (Seal)    _____ (Seal)
                           -Borrower                       -Borrower

State of WASHINGTON, County of KING                    , ss

On this day personally appeared before me **CHRISTY A. TIERNEY and PATRICK L. TIERNEY, WIFE AND HUSBAND,** to me known to be the individual, or individuals described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned

Given under my hand and official seal this 9th day of March 2004

(Seal or Stamp)

My Commission Expires: 04/09/04

Notary's printed or stamped name Ngoc Chau
Notary Public in and for King County, WA State,
Residing at Sammamish

**WASHINGTON**-Single Family **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3048 1/01** *(page 13 of 13 pages)*

Loan No   2004-02-23-00209

## BALLOON PAYMENT RIDER TO SECURITY INSTRUMENT

**28023 NORTHEAST 140TH PLACE, DUVALL, WASHINGTON 98019**
[Property Address]

THIS BALLOON PAYMENT RIDER ("Rider") is made this **5TH** day of **MARCH, 2004,** and amends a Note in the amount of **$208,000.00** (the "Note") made by the person(s) who sign below ("Borrower") to **MILA, INC., A WASHINGTON CORPORATION** ("Lender") and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date and given by Borrower to secure repayment of the Note

In addition to the agreements and provisions made in the Note and the Security Instrument, both Borrower and Lender further agrees as follows.

**IF NOT PAID EARLIER, THIS LOAN IS PAYABLE IN FULL ON APRIL 1, 2019 (THE "MATURITY DATE"). BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN AND INTEREST THEN DUE. THIS IS CALLED A "BALLOON PAYMENT". THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME**

At least ninety (90) but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time )

_____     _____(Seal)
Witness     Borrower   **CHRISTY A. TIERNEY**

_____     _____(Seal)
Witness     Borrower   **PATRICK L. TIERNEY**

_____     _____(Seal)
Witness     Borrower

_____     _____(Seal)
Witness     Borrower

_____     _____(Seal)
Witness     Borrower

_____     _____(Seal)
Witness     Borrower

EXHIBIT  B

**Electronically Recorded**
**20110805000798**

INGEO SYSTEMS INC          ADT          14.00
Page 001 of  001
08/05/2011 02:17
King County, WA

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

This space for Recorder's use

DocID# 6874427262847646

Tax ID:     667293-0110-09

Property Address:
28023 NE 140th Place
Duvall, WA 98019-8389
WA-ADT 14990361     8/1/2011

Recording Requested By:
**Bank of America**
Prepared By:
**Danilo Cuenca**
**888-603-9011**
450 E. Boundary St.
Chapin, SC 29036

MIN #: 10017520000460876          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2004-5** whose address is **101 BARCLAY ST - 4W, NEW YORK, NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          **MILA, INC.**
Made By:                  **CHRISTY A. TIERNEY AND PATRICK L. TIERNEY, WIFE AND HUSBAND**

Original Trustee:        **TICOR TITLE COMPANY**
Date of Deed of Trust:   **3/5/2004**
Original Loan Amount:    **$208,000.00**
Recorded in King County, WA on: **3/15/2004**, book N/A, page N/A and instrument number 20040315000489

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
8-3-11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:
Luis Roldan, Assistant Secretary

State of **California**
County of **Ventura**

On 08-03-2011 before me, _____NAVID PAKTAN_____, Notary Public, personally appeared **Luis Roldan**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____NAVID PAKTAN_____     (Seal)
My Commission Expires: 3-11-13

NAVID PAKTAN
Commission # 1837714
Notary Public - California
Santa Clara County
My Comm. Expires Mar 11, 2013

EXHIBIT  C

20190826001519.001

**Instrument Number: 20190826001519 Document:ADT Rec: S21.00 Page-1 of 4**
**Record Date:8/26/2019 4:03 PM**
**Electronically Recorded King County, WA**

Filed For Record at Request of:

Carrington Mortgage Services, LLC
1600 South Douglass Road
Suite 200-A
Anaheim, California 92806

# ASSIGNMENT OF DEED OF TRUST

19-125652 CGG

For value received, the undersigned, as Beneficiary, hereby assigns and transfers to The Bank of New York Mellon, f/k/a The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5 whose address is c/o Carrington Mortgage Services, LLC, 1600 South Douglass Road, Suite 200-A, Anaheim, California 92806 all rights, title and beneficial interest under that certain Deed of Trust, dated March 5, 2004, executed by Christy A. Tierney and Patrick L. Tierney, wife and husband, Grantor, to Ticor Title Company, Trustee, and recorded on March 15, 2004, under Auditor's File No. 20040315000489, Records of King County, Washington State, describing land therein as:

LOT(S) 11, DUVALL'S PARKWOOD ESTATES DIVISION 3, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 138, OF PLATS, PAGE(S) 6 THROUGH 8, IN KING COUNTY, WASHINGTON.

Abbrv. Legal: LT 11, DUVALL'S PARKWOOD ESTATES DIV. 3, VOL. 138, PGS 6-8
Tax Parcel No.: 667293-0110-09

Property Address: 28023 NE 140th Place, Duvall, WA 98019

Together with note or notes therein described or referred to, the money due and to become due thereon or owing on respect thereof, with interest, the full benefit of all the powers and all the covenants and provisions therein contained, and all rights accrued or the accrue under said Deed of Trust.

CONTINUE ON NEXT PAGE..............

Assignment of Deed of Trust
P a g e | **1**
19-125652

Instrument Number: 20190826001519  Document:ADT Rec: $21.00 Page-2 of 4          20190826001519.002
Record Date:8/26/2019 4:03 PM King County, WA

Dated _____ 8/19/19 _____

The Bank of New York Mellon fka The Bank
of New York as trustee for the benefit of the
certificateholders of the CWABS Inc., Asset-
Backed Certificates, Series 2004-5, by
Carrington Mortgage Services, LLC, as
servicer and attorney-in-fact

By _____
Name _____ Ami Bhavsar _____
Title _____ Supervisor Pre Foreclosure Compliance

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document, to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document

State of _____ California _____
County of _____ Orange _____
On _____ AUG 1 9 2019 _____, before me, _____ AMI BHAVSAR _____, Notary Public,
personally appeared, _____ Tricia L. Cannon _____, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

TRICIA L. CANNON
Notary Public - California
Orange County
Commission # 2201297
My Comm. Expires Jun 15, 2021

Assignment of Deed of Trust
P a g e | 2
19-125652

Instrument Number: 20190826001519  Document:ADT Rec: S21.00 Page-3 of 4                    20190826001519.003
Record Date:8/26/2019 4:03 PM King County, WA

<table>
<tr><td>A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.</td><td>CALIFORNIA ALL – PURPOSE<br><br>CERTIFICATE OF ACKNOWLEDGMENT</td></tr>
</table>

State of California

County of ORANGE

On  **AUG 1 9 2019**  , before me, _____ Tricia L. Cannon _____, Notary Public, personally appeared,

_____ **AMI BHAVSAR** _____, who proved to me on the basis of satisfactory evidence to be the

person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they

executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument

the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is

true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Tricia L. Cannon

[Seal: TRICIA L. CANNON
Notary Public - California
Orange County
Commission # 2201297
My Comm. Expires Jun 15, 2021]

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

**DESCRIPTION OF THE ATTACHED DOCUMENT**

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

**CAPACITY CLAIMED BY THE SIGNER**
- ☐ Individual (s)
- ☐ Corporate Officer

_____
(Title)

- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other_____

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

Instrument Number: 20190826001519   Document:ADT Rec: $21.00 Page-4 of 4       20190826001519.004
Record Date:8/26/2019 4:03 PM King County, WA

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☐ Individual(s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTION FOR COMPLETING THIS FORM

_Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required._

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgement.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of the document signer(s) who personally appeared at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they; is/are) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

Assignment of Deed of Trust
P a g e | **3**
19-125652

20190827000076.001

**Instrument Number: 20190827000076 Document:AST Rec: $21.00 Page-1 of 4**
**Record Date:8/27/2019 9:28 AM**
**Electronically Recorded King County, WA**

**AFTER RECORDING MAIL TO:**
Aztec Foreclosure Corporation of Washington
1499 SE Tech Center Place, Suite 255
Vancouver, WA 98683

**Document Title:** Appointment of Successor Trustee

**Reference number of document:** Instrument No. 20040315000489

**Grantor(s):** The Bank of New York Mellon, f/k/a The Bank of New York as trustee for registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5

**Grantee(s):** Aztec Foreclosure Corporation of Washington

**Legal:** Lot(s) 11, Duvall's Parkwood Estates Division 3, according to the plat thereof recorded in Volume 138, of Plats, page(s) 6 through 8, in King County, Washington.

**Abbreviated Legal:** Parkwood Estates Div No 03 (Duvall)

**Assessor's Parcel number:** 667293-0110-09

SUBSTITUTION OF TRUSTEE                  Page 1 of 1