1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK AS TRUSTEE FOR REGISTERED HOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2004-5,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK LEONARD TIERNEY,<br><br>Defendant. | Case No. C23-329RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT |

## I.     INTRODUCTION

This matter comes before the Court on Plaintiffs Bank of New York Mellon, f/k/a The Bank of New York as Trustee for Registered Holders of CWABS, Inc., Asset-Backed Certificates, Series 2004-5 ("BNYM") and Carrington Mortgage Services ("Carrington") (collectively "Counterdefendants")'s Motion to Dismiss Counterclaim and Third-Party Complaint. Dkt. #14. Defendant Patrick Leonard Tierney opposes. Dkt. #17. The Court has determined that it can rule without the need of oral argument. For the reasons below, the Court GRANTS IN PART and DENIES IN PART this Motion.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 1

## II.  BACKGROUND[1]

On July 17, 2020, Mr. Tierney sued BNYM's loan servicer, Carrington, and the foreclosing trustee, Aztec Foreclosure Corporation of Washington, for alleged violations of the Real Estate Settlement Procedures Act ("RESPA").  Case No. 2:20-cv-01245-RSM, Dkt. #1-2. Mr. Tierney later added BNYM as a defendant, alleging causes of action for violations under the state Consumer Protection Act ("CPA"), the Fair Debt Collection Practices Act, the Truth in Lending Act, the Equal Credit Opportunity Act, and claims of negligence and declaratory and injunctive relief.  Case No. 2:20-cv-01245-RSM, Dkt. #1-6.  BNYM and Carrington were represented by the same counsel.  On November 12, 2021, this Court granted summary judgment in favor of BNYM on all claims but denied Carrington's motion for summary judgment with respect to the RESPA claim.  Case No. 2:20-cv-01245-RSM, Dkt. #81. Mr. Tierney appealed this decision to the Ninth Circuit, and the Ninth Circuit affirmed.  Case No. 2:20-cv-01245-RSM, Dkt. #131.

On February 8, 2022, Mr. Tierney and Carrington reached a settlement agreement of the remaining claims, which did not include claims against any Defendant other than Carrington. Case No. 2:20-cv-01245-RSM, Dkt. #91.  That settlement agreement fixed the amount due on the loan at $198,000.  *See* Dkt. #125 at 2.  Magistrate Judge Michelle L. Peterson reported the settlement to the undersigned and, based thereon, the remaining claims were dismissed, subject to a reservation of jurisdiction necessary to finalize the settlement. Case No. 2:20-cv-01245-RSM, Dkt. #92.  The Order stated that the case and all claims were dismissed "with prejudice and without costs to any party." *Id.*  Carrington refused to sign the settlement agreement unless

---

[1] The Court will accept all facts stated in the Counterclaim and Third-Party Complaint, Dkt. #9, as true for purposes of this Motion.  The following facts come from that pleading unless otherwise noted.  Undisputed procedural history comes from the record in Case No. 2:20-cv-01245-RSM.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 2

Mr. Tierney agreed to release his right to appeal the summary judgment order entered in favor of BNYM.  A follow-up hearing was conducted before Judge Peterson on February 11, 2022, where BNYM argued that it should be entitled to add its attorneys' fees to the payoff amount if BNYM prevailed.  Judge Peterson denied this request and held that if unforeseen circumstances caused Carrington to incur additional costs pending the December 8, 2022, payoff, Carrington's recourse would be to file a motion for reconsideration of the payoff amount.  Carrington then filed a motion to reopen the case to seek review of Judge Peterson's order, and this Court denied that relief.  Case No. 2:20-cv-01245-RSM, Dkt. #114.  The Court found that Carrington acted in bad faith in the settlement negotiations and, based thereon, ordered it to pay Tierney $5,000 in sanctions.  *Id*.  Carrington filed a motion for reconsideration, which was denied.  Case No. 2:20-cv-01245-RSM, Dkt. ##117, 121.

On April 11, 2022, BNYM filed a Rule 60(b) motion seeking an order to vacate or modify the settlement amount to allow Carrington and BNYM to add attorneys' fees to the $198,000 loan payoff.  Case No. 2:20-cv-01245-RSM, Dkt. #119.  On May 2, 2022, this Court denied the motion to vacate, noting that no motion for fees was before the Court and that such would have to await determination of the issues on appeal.  Case No. 2:20-cv-01245-RSM, Dkt. #124.

On June 1, 2022, BNYM and Carrington appealed the following District Court orders to the Ninth Circuit: (1) Order Enforcing the Oral Terms of Settlement, (2) Order Denying Rule 60(b) Motion, and (3) Order Granting Motion to Enforce Settlement and Denying Motion to Reopen Case. Case No. 2:20-cv-01245-RSM, Dkt. #126. Later, BNYM and Carrington moved to voluntarily dismiss their appeal and in March 2023 the Ninth Circuit dismissed the case. Case No. 2:20-cv-01245-RSM, Dkt. #130.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Per the settlement agreement, Mr. Tierney was to pay the $198,000 loan payoff by December 8, 2022.  Just prior to that deadline, Mr. Tierney was preliminarily approved for a reverse mortgage with America Advisors Group ("AAG"), which appraised his home at $700,000.  AAG requested a payoff of the loan.  In a letter dated December 7, 2022, BNYM's counsel, Luke I. Wozniak, confirmed to Mr. Tierney that the payoff amount was $198,000 consistent with the May 2, 2022, Order, but stated that the money would have to be wired by the close of business on the following day.  AAG was not able to close on the loan by December 8, 2022.

On February 9, 2023, Mr. Tierney's attorney contacted Mr. Wozniak and asked for an updated payoff quote that would include interest from December 8, 2022. Wozniak responded on February 27, 2023.  The updated quote did not include interest but instead $137,850 in "other unpaid expenses" and $15,428 in other costs - for a total payoff of $351,278.94.  These unpaid expenses were later revealed to be Wozniak's firm's attorneys' fees from the prior lawsuit representing both BNYM and Carrington.  As a result of this increase, Mr. Tierney alleges, he lost the reverse mortgage with AAG and was "forced to fire sale his home" for $552,500.  The title company handling the sale paid Carrington $355,277.02 out of the proceeds based on a quote from Carrington that was about $4,000 more than the previous quote.

BNYM filed this complaint on March 7, 2023, seeking a declaratory judgment stating that it was entitled to add its attorneys' fees to the outstanding balance of the loan.  Dkt. #1.  Mr. Tierney filed a counterclaim and third-party complaint, adding Mr. Wozniak and his law firm ("Wright Finlay"). Dkt. #9.  Mr. Tierney alleges: Carrington violated RESPA by "unilaterally adding sums to Tierney's loan and collecting those sums from the proceeds of the sale of Tierney's home;" Wright Finlay and Wozniak violated the Fair Debt Collections Practices Act

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 4

("FDCPA") and Washington Collection Agency Act (RCW § 19.16) by "collecting fees and expenses not authorized by law from the proceeds of the sale of Tierney's home;" Carrington and BNYM breached the implied duty of good faith and fair dealing  contained in the March 2004 Deed of Trust by "unilaterally adding fees to Tierney's loan, without court permission or oversight;" Carrington, BNYM, and Wright Finlay and Wozniak violated the Washington Consumer Protection Act with the above conduct, and that these same parties engaged in the tort of outrage with the above conduct.  *Id*.  Counterdefendants now move to dismiss these counterclaims.

### III.   DISCUSSION

#### A.  Legal Standard

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id*. at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed.  *Id*. at 570.

#### B.  Analysis

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 5

1

### 1. RESPA

2

Counterdefendants first move to dismiss Mr. Tierney's RESPA claim because such a

3

claim requires a qualified written request ("QWR").  This Court has previously explained that

4

"12 U.S.C. §2605(e)(1)(B) defines a [QWR] as a written correspondence that includes a

5

6

statement of the reasons for the belief of the borrower that the account is in error or provides

7

sufficient detail regarding information sought by the borrower." *Tierney v. Carrington Mortg.*

8

*Servs., LLC*, 2021 U.S. Dist. LEXIS 219288, at *10 (W.D. Wash. Nov. 12, 2021).

9

Mr. Tierney pleads that his counsel emailed Mr. Wozniak on February 9, 2023, requesting

10

documents supporting Carrington's payoff quote.  Dkt. #13 at ¶ 19.  Later, he pleads that "[o]n

11

February 27, 2023, Tierney demanded that Carrington produce all documents and invoices

12

13

substantiating the $137,840.48 in 'Other Unpaid Expenses,'" and that this "constitutes a qualified

14

written request ('QWR') under RESPA."  *Id*. at ¶ 25.

15

The Court finds that the February 27 email asking for substantiation for over $100,000 in

16

"other unpaid expenses," given the circumstances of this case, and making all inferences in the

17

light most favorable to the non-moving party, could plausibly qualify as a QWR under RESPA.

18

19

It was a written email from counsel representing the borrower to counsel that has represented the

20

loan servicer in a lengthy process of litigation.  The Court is not convinced that an email cannot

21

qualify as a written correspondence as a matter of law.  Even if the email does not provide reasons

22

23

for the belief that the account is in error, it does provide sufficient detail regarding information

24

sought by the borrower considering the long history of the dispute.  Counterdefendants were fully

25

aware of the dispute over rolling attorney's fees into the loan payoff.  This was not a "general

26

notice of inquiry."  *See* Dkt. #17 at 10 (citing *Eifling v. Nat'l City Mortg.*, 2011 U.S. Dist. LEXIS

27

28

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 6

30517, at *7 (W.D. Wash. Mar. 15, 2011)).   Under these unusual circumstances, 12(b)(6) dismissal is not warranted.

Counterdefendants also argue that "[i]n any event, Tierney's claim would fail because he admits that WFZ responded to Tierney's counsel's email on March 7, 2023, and produced WFZ's billing statements…. Carrington complied with any obligation it might have had under 12 C.F.R. 1024.36(d) and Tierney's claim fails for that reason as well."  Dkt. #17 at 11.  Although Mr. Tierney pleads that Counterdefendants responded to the email with billing statements, he also pleads that the billing statements were inadequate and did not fully explain the "Other Unpaid Expenses."  Dkt. #13 at ¶ 27.  The Court will not determine the adequacy of the response at this stage, and must instead accept all facts alleged as true, and make all inferences in the light most favorable to the non-moving party.

Counterdefendants finally argue that Mr. Tierney has failed to plead actual damages. Section 2605(e) subjects Counterdefendants to liability for the borrower's actual damages proximately caused by such failure and "any additional damages… in the case of a pattern or practice of noncompliance with the requirements of this section…." 12 U.S.C. § 2605(f)(1).  The Court finds that damages have been adequately pled and that in any event are clear and understandable to Counterdefendants given the procedural history.

### 2.  Breach of the Covenant of Good Faith and Fair Dealing

Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). The implied duty of good faith and fair dealing "cannot add or contradict express contract terms

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 7

and does not impose a free-floating obligation of good faith on the parties." *Id*. at 113. Instead, "the duty arises only in connection with terms agreed to by the parties." *Id*. (citations omitted). The duty can arise 'when the contract gives one party discretionary authority to determine a contract term." *Id*. (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738, 935 P.2d 628 (1997)).

Mr. Tierney pleads that "[t]he March 2004 Deed of Trust contains an implied duty of good faith and fair dealing," and that "Carrington and Mellon breached the implied duty of good faith and fair dealing by unilaterally adding fees to Tierney's loan, without court permission or oversight and by thereafter collecting such additional fees out of the proceeds of the sale of Tierney's home." Dkt. # 13 at ¶ 35.

Counterdefendants argue that BNYM could not have breached the implied duty of good faith and fair dealing in the 2004 Deed of Trust because Section 9 of that agreement "specifically provides that the proper means for BNYM to seek to recover its attorney's fees is for them to be added to the Loan." Dkt. #14 at 13 (emphasis omitted). The Deed of Trust states that "reasonable attorneys' fees…. shall become additional debt of Borrower secured by this Security Instrument." *Id*. Counterdefendants argue that adding the fees was mandatory and that there was thus no discretion.

The Court disagrees. There was clearly a live dispute between the parties and even between the Court and Counterdefendants about rolling over attorney's fees from the previous litigation into the loan. Rolling over the fees, especially doing so without an assessment by the Court to determine what was a "reasonable" amount, could plausibly constitute a misuse of discretion and a breach of the covenant of good faith and fair dealing. The Court need not rule on the ultimate issue at this time and will simply deny the Motion as to this claim.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 8

The Court also notes that Mr. Tierney appears to plead that Carrington as well breached the implied duty of good faith and fair dealing, an issue which is not addressed in the Motion.

### 3. Washington's Consumer Protection Act

To state a claim under the CPA, Mr. Tierney must allege facts sufficient to meet each of the following elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 204 P.3d 885, 889 (2009).

Mr. Tierney pleads only that "[t]he conduct alleged herein was carried out in violation of the state and federal law, including [citations to law].  Such conduct constitutes unfair and deceptive acts that impact the public interest…. As a direct and proximate result of such conduct, Tierney has suffered damage in an amount to be determined at the time of trial." Dkt. #13 at ¶¶ 38 and 39.  This is clearly inadequate.  Mr. Tierney does not plead that the acts in question occurred in trade or commerce.  He does not plead that they affect the public interest. Counterdefendants argue convincingly that Mr. Tierney cannot plead either of these things. *See* Dkt. #14 at 19–20.  In response to this Motion, Mr. Tierney argues only that "[t]he facts plead here satisfy every element of a claim under the CPA." Dkt. #17 at 8.  Mr. Tierney pleads only a formulaic recitation of the elements of a CPA claim and dismissal is warranted.  Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  The Court finds that Mr. Tierney cannot plead other facts to cure the above deficiencies and leave to amend will not be granted.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 9

### 4. Outrage

The tort of outrage requires: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195-96, 66 P.3d 630 (2003).  These elements were adopted from the Restatement (Second) of Torts § 46 (1965) in *Grimsby v. Samson*, 85 Wn.2d 52, 59-60, 530 P.2d 291 (1975). *Grimsby* holds that any claim for outrage must be predicated on behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." 85 Wn.2d at 59 (quoting Restatement (Second) of Torts § 46 cmt. d).

Mr. Tierney argues that a claim of outrage has been sustained under circumstances analogous to what occurred here.  Dkt. #17 at 15–16 (citing *Lucero v. CENLAR FSB*, No. C13-0602RSL, 2105 WL 5024047 at *8 (WD Wa. August 25, 2015)).

On Reply, Counterdefendants point out certain factual distinctions between this case and *Lucero.*  Dkt. #22 at 12.  In their Motion, they argue that outrage is not available because of the independent duty doctrine and because they were "merely exercising a legal right."  Dkt. #14 at 21–22.  Specifically, they state, "as pertinent herein, this case arises in the real property context and the rights, duties, and obligations of the parties are governed by the terms of the DOT. As a matter of law Tierney is not permitted to transmute a contract dispute into a tort." *Id*. at 21.  They state, "[u]nder Restatement (Third) of Torts ("Restatement,") '[m]erely exercising a legal right does not constitute a tort...'*Id.* at 22 (citing Restatement, § 46, Comment E (2012); *Steinbock v. Ferry Cty. Pub. Util. Dist. No. 1*, 165 Wash. App. 479, 492, 269 P.3d 275 (2011)). According to Counterdefendants, "Washington allows creditors to 'employ all legal and legitimate means to collect a debt' and can be held liable only if he/she employs improper, excessive, or oppressive

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 10

means, such as baseless and improper threats." *Id*. (citing *Jackson v. Peoples Fed. Credit Union*, 25 Wn.App. 81, 85, 604 P.2d 1025, 1028 (1979); Restatement, § 46, Comment E.)

The Court finds *Lucero* sufficiently analogous for the pleading to be plausible. The independent duty doctrine would only bar this claim if it were brought solely based on the Deed of Trust. However, Mr. Tierney's allegations venture outside contractual obligations. Furthermore, taking all pleaded facts as true and in the light most favorable to the non-moving party, Counterdefendants' actions were not "merely exercising a legal right" but were in fact "improper, excessive, or oppressive means." This claim will not be dismissed at this time.

### 5. Litigation Privilege

Finally, Counterdefendants argue:

> Additionally, the claim [of outrage] is barred by the litigation privilege, which "preclude[s] liability arising from conduct related to a lawsuit." *Mason v. Mason*, 19 Wn.App. 2d 803, 832, 497 P.3d 431 (2021). The privilege bars tort claims arising from an attorney's acts that are pertinent to litigation. *Id*. Here, the acts at issue involved communications between the parties' attorneys relating to the settlement agreement between Tierney and CMS while the litigation between Tierney and BNYM was pending.

Dkt. #14 at 23. Mr. Tierney fails to respond to this issue in briefing. *See* Dkt. #24.

The Court is not satisfied with the briefing and will therefore set oral argument on this limited issue. The Court particularly wishes the parties to address why claims have been filed in this new lawsuit rather than being raised through motions practice in the prior case.

### IV.   CONCLUSION

Having considered the briefing and the remainder of the record, the Court hereby finds and ORDERS that Counterdefendants' Motion to Dismiss, Dkt. #14 is GRANTED IN PART AND DENIED IN PART as stated above. Mr. Tierney's CPA claim is DISMISSED. The Court will contact the parties to set oral argument on the issue of litigation privilege.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED this 17th day of October, 2023.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 12